| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**GENOVA BURNS LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Phone: (973) 467-2700<br>*Counsel to Third Paramus Associates, LLC*<br>**DONALD W. CLARKE, ESQ.**<br>**JACLYNN N. McDONNELL, ESQ.**<br>*dclarke@genovaburns.com*<br>*jmcdonnell@genovaburns.com* |

In re:

SBB Shipping USA, Inc.,

     Debtor-in-Possession.

Chapter 11

Case No.: 24-22278-VFP

Hearing Date: January 22, 2025

## LANDLORD'S OBJECTION TO
## ALL FIRST DAY MOTION FINAL RELIEF SOUGHT BY THE DEBTOR

  Third Paramus Associates, LLC ("Landlord") hereby objects (the "Objection") to the final relief sought by the Debtor, including for: continued payment of critical vendors [Doc 38] (withdrawn by Doc 59); continued use of cash collateral [Doc 39]; and postpetition financing [Doc 40] filed by the Debtor in the above-captioned bankruptcy case.

  1. The Landlord recently filed a motion seeking to reject the lease on the Debtor's premises located in Paramus [Doc __], and an objection to the Debtor's motion to find the Landlord violated the automatic stay and for sanctions. [Doc __] The Landlord incorporates the facts and argument detailed therein as is if fully set forth herein.

  2. The Court held hearings on the Debtor's first day motions on December 23, 2024. See transcript of December 23, 2024 hearing ("Transcript") attached as **Exhibit A.**

  3. As was evident in the colloquy with the Court, it is not clear what exactly the Debtor does, or why it is in bankruptcy.

4. For example, during a discussion concerning the Landlord's Paramus property, the Debtor admitted that it has no operating business at the Paramus location. Instead, while the underlying lease is executed by and between the Debtor and the Landlord, it is a subsidiary, allegedly, Hacker Kitchens Paramus, LLC ("HKP") that uses the Paramus property as a showroom to sell "Hacker" kitchen equipment. *See* Transcript, page 6-7.

5. The Debtor alleges that it "operates in multiple lines of revenue" through investments in its subsidiaries. *See* Transcript, page 7.

6. The 13-week projection ("Projection")[1], [2] shows the bulk of the Debtor's projected revenue will come from its insider affiliated postpetition loans.

7. As of the date of this Objection, the only income listed on the Projection will come from "Ocean Freight Revenues," "Consolidation Business," Trucking Business, "Sale of Inventory Appliances," and "Warehouse Storage Revenue."

8. However, the Debtor is not in the consolidation business, the trucking business, or warehousing business, and it does not own the appliances they claim they intend to sell.

9. To the extent the Debtor is a mere holding company, none of the subsidiaries have filed petitions. The Debtor is not permitted to claim bankruptcy rights and protections for assets and interests owned and controlled by its subsidiaries.

10. A debtor's estate is made of assets in which the debtor holds legal or equitable interest, not the assets in which *its subsidiaries or affiliates* might hold a legal or equitable interest.

---

[1] According to the Debtor, week 1 began on the petition date, December 14, 2024
[2] On the day these Objections were due, the Debtor filed a supplemental certification and a revised projection. The Debtor reserves the right to address any revision at the hearing. For the purpose of this Objection, the revised projection includes the same infirmities as the initial projection.

2

11. The Court highlighted this concern at the hearing on the first day relief. *See* Transcript, pages 6-9. (Pages images below).

```
16              THE COURT:  So, Ms. Woody, can you just tell me then
17   -- you even said it's a primarily, a logistics business, but it
18   sounds like the Paramus premises -- you know, Route 17, I'm
19   pretty familiar with that area.  That's heavy duty retail and
20   very, very popular retail.  I'm still not clear on what exactly
21   is being done -- well, I guess nothing is being done right now,
22   at the premises on Route 17 in Paramus or what was being done.
23   What were they selling from there?
24              MS. WOODY:  Yes, Your Honor.  The debtor owns a
25   subsidiary company called Hacker Kitchens Paramus, LLC.  That
```

```
                                                                  7
1   entity was selling Hacker brand kitchen appliances and set-ups
2   out of the showroom in the Paramus design center, which is the
3   property that is being leased from the landlord present today.
4   The debtor is moving out of that property to its Northvale
5   warehouse to set up a showroom at that location in order to
6   reduce rent costs.
```

```
 7                THE COURT:  But, in other words, so that's kind of --
 8   I think that might be where the rub lies in the sense that this
 9   is a subsidiary of the debtor, that's not the debtor, that's
10   selling these appliances and set-ups.  I'm not sure what set-
11   ups are.  Does that mean cabinets?  What does that mean, set-
12   ups?
13                MS. WOODY:  Your Honor, I'm not one hundred percent
14   clear, but it has to do with the design of the kitchens
15   overall, and then the entire operation of installing this
16   particular brand of kitchen installation.
17                THE COURT:  So, what -- what does that have to do
18   with the shipping business of the debtor?
19                MS. WOODY:  I believe the debtor just has multiple
20   lines of revenue, Your Honor.
21                THE COURT:  I'm sorry?
22                MS. WOODY:  The debtor operates in multiple lines of
23   revenue.  This is a project that the debtor has invested in to
24   support its subsidiary.
25                THE COURT:  All right.  Let me take it one step back.
```

4

```
                                                                    8
 1  Who owns the inventory that's at that location or that
 2  apparently is being moved out of that location?
 3          MS. WOODY:  It is the debtor's understanding that SBB
 4  Shipping owns the entity itself.
 5          THE COURT:  Well, who would understand besides the
 6  debtor?  I mean, you know, that's the debtor and this is its
 7  subsidiary.
 8          MS. WOODY:  Yes, Your Honor.  It is reflected on the
 9  books as SBB Shipping.
10          THE COURT:  As the ownership of the appliances and
11  what is that?
12          MS. WOODY:  Of the showroom displays.
13          THE COURT:  And what about the appliances that they
14  sell?  You said inventory.  So, inventory to me means things
15  that are available for sale.
16          MS. WOODY:  Yes, Your Honor.  No inventory -- my
17  understanding is that there's no inventory at the Paramus
18  location.  It is the showroom displays that are in dispute and
19  that are attempting to be moved.
20          THE COURT:  I don't know.  I'm -- so it's a
21  subsidiary, but it's really operated and controlled by the
22  debtor and --
23          MS. WOODY:  Yes, Your Honor.
24          THE COURT:  -- I'm not even sure why -- I'm not even
25  sure why the subsidiary exists.
```

```
 1          MS. WOODY:   Your Honor, we've done our best to --
 2          THE COURT:   And why the subsidiary didn't file.
 3          MS. WOODY:   Yes.  So SBB Shipping is -- filed on
 4  behalf of all of its revenue streams, so, all of the -- all of
 5  the projects that the entity has in a flight.  The subsidiary
 6  is the manager of the showroom in Paramus, but it is SBB that
 7  owns the assets and has invested in the  installation of those
 8  displays and so forth.
 9          THE COURT:   But -- okay.  So, when you say SBB filed
10  on behalf of all revenue streams and it -- and, you know, it
11  almost implies that SBB -- well, a) just controls and has
12  ownership of all that's going on, but those entities didn't
13  file.
```

12. Since the hearing, the Debtor has not taken any steps to clarify the record or explain what exactly is going on with this case and this Debtor.

13. What is clear is that we do not know how many of the itemized receivables or payables detailed in the Projection are attributable to the Debtor and its operations as a "Non-Vessel Operating Common Carrier that operates as the intermediary between shipping companies that own and operate the vessels and businesses that need to ship the products…." *See* Transcript, page 5.

14. If the various "revenue streams," including the receivables and payables detailed in the Projection, belong to the various subsidiaries, then the Debtor completely ignores the corporate form of all of its subsidiaries to the prejudice of the creditors of each of those subsidiaries.

15. To be clear, there is no indication in the Projection that any of the receivables are actually due to the Debtor as opposed to its subsidiary or some affiliate. Clearly, those subsidiaries

6

and affiliates have creditors that have a claim to the revenues of the respective subsidiary based on its debts.

16. Similarly, there is no indication in the Projection that any of the payables listed are due from the Debtor and not the subsidiaries or affiliates.

17. Clearly, the Landlord has a claim against the Debtor based upon the Lease. Why should the Landlord's rights to any assets or value of the Debtor be lost to the creditors of the Debtor's subsidiaries?

18. There is no pending motion to substantively consolidate this Debtor with any other entities.

19. The Projections are completely meaningless for the purpose of justifying any of the relief sought by the Debtor.

20. Furthermore, the supplemental certification by the Debtor [Doc 58] represents that, due to "advances in the Bergen County Superior Court matter of *Grover v. Cakmak*, case no. BER-C-000134-24, the Debtor anticipates being able to begin sales of the associated disputed inventory in the final week of January, reducing the initial urgency and need behind the Debtor's DIP lending request."

21. There is no indication that any such "disputed" inventory belongs to the Debtor, or how or why the Debtor would be entitled to the revenues therefrom.

22. Until the Debtor can explain why it is obligated to pay the debts of non-debtor subsidiaries, or how it is entitled to the receivables of non-debtor subsidiaries, this estate must not be burdened with additional post-petition obligations, and the Debtor is entitled to no relief.

23. Based on the above, the Landlord respectfully requests the Debtor's requests for final relief be denied.

**WHEREFORE**, for the reasons stated above, Landlord respectfully requests that the Court deny the Debtor's requests for final relief.

Dated: January 14, 2025                                **GENOVA BURNS, LLC**

                                                          _/s/ Donald W. Clarke_
                                                          Donald W. Clarke