| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**GENOVA BURNS LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Phone: (973) 467-2700<br>*Counsel to Third Paramus Associates, LLC*<br>**DONALD W. CLARKE, ESQ.**<br>**JACLYNN N. McDONNELL, ESQ.**<br>*dclarke@genovaburns.com*<br>*jmcdonnell@genovaburns.com* |

In re:

SBB Shipping USA, Inc.,

                  Debtor-in-Possession.

Chapter 11

Case No.: 24-22278-VFP

Hearing Date: January 22, 2025

## OBJECTION TO DEBTOR'S MOTION FOR ORDER FINDING CREDITOR IN VIOLATION OF THE AUTOMATIC STAY AND FOR SANCTIONS

Third Paramus Associates, LLC ("Landlord") hereby objects (the "Objection") to the Motion for an Order Finding Creditor in Violation of the Automatic Stay and for Sanctions (the "Motion") filed by the Debtor in the above-captioned bankruptcy case.

### BACKGROUND

1.      On or about June 28, 2023, SBB Shipping, USA (the "Debtor") entered into a commercial lease agreement with the Landlord (the "Lease"), which provides for construction, improvements and modifications of premises located at 762 Route 17, Paramus, New Jersey 07652 (the "Premises"). The Debtor is obligated to make monthly Base Rent payments in the amount of not less than $44,159.11.

2.      The Debtor's obligations under the Lease are guaranteed by the Debtor's sole principal and owner, Batuhan Cakmak. Since the commencement of the Lease agreement, the Debtor has made no payments in accordance with the Lease.

1

3. On December 9, 2024, the Landlord notified the Debtor that it was in default under the Lease. A true copy of the default letter is attached hereto as **Exhibit A**.

4. On Friday, December 14, 2024, at approximately 12:00pm ET, Mr. Cakmak returned the key to the Landlord's representative and agreed to coordinate with the Landlord for the removal of the remaining property ("FFE").[1]

5. On December 14, 2024, at 11:11pm ("Petition Date"), unbeknownst to the Landlord, the Debtor filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code).

6. In the Debtor's Motion, Mr. Cakmak claims he informed the Landlord of the bankruptcy filing on December 15th. Neither the Landlord nor Landlord's non-bankruptcy counsel has any record of such notification, and none is attached to the Motion.

7. On Monday, December 16, 2024, without knowledge or notice of the Debtor's bankruptcy filing, the Landlord, through non-bankruptcy counsel, forwarded a Notice of Termination of Lease ("Termination Notice").

8. Also, on December 16th, with the Termination Notice, the Landlord sent the Debtor a current invoice for outstanding amounts due ("Final Invoice").

9. As detailed by the Debtor in its Motion, _**after**_ the Termination Notice and Final Invoice were received by the Debtor, Mr. Stevens, the Debtor's bankruptcy counsel, contacted the Landlord's non-bankruptcy counsel to advise of the bankruptcy filing.

---

[1] In his supplemental certification filed January 13th, Mr. Cakmak suggests that he returned an "emergency elevator key," and did not intend to surrender the Premises. The Landlord is not aware of any such key. There is no "emergency elevator key." In an emergency, posted signs direct everyone to use the stairs. Mr. Cakmak returned the key that operates the passenger elevator and the door to the primary access point for customers to enter the showroom.

2

## ARGUMENT

*The Debtor is not an individual entitled to protection under 362(k). Furthermore, an inadvertent violation of the automatic stay does not warrant sanctions.*

The Debtor cites § 362(k) as the basis of its request for sanctions. A party seeking damages for a violation of an automatic stay pursuant to 11 U.S.C. § 362(k) must prove "(1) that a bankruptcy petition was filed, (2) that *the debtor is an individual*, (3) that *the creditor received notice of the petition,* (4) that the creditor's actions were in willful violation of the stay, and (5) that *the debtor suffered damages*." *In re Laskaratos*, 605 B.R. 282, 299-300 (Bankr E.D.N.Y. 2019) (citing *In re Leiba*, 529 B.R. 501, 506 (Bankr. E.D.N.Y. 2015)) (emphasis added). The term "willful" means "any deliberate act taken by a creditor in violation of the automatic stay, which the violator knows to be in existence." *In re Leiba*, 529 B.R. at 507 (quoting *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.,* 902 F.2d 1098, 1105 (2d Cir. 1990)).

When a party violates the stay without knowledge that a bankruptcy case is pending and/or that the stay is in effect, the violation is considered a technical or inadvertent violation. *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), cert. denied 429 U.S. 1093 (1977); *In re Clayton*, 235 B.R. 801, 807 (Bankr. M.D.N.C. 1998); *Flack*, 239 B.R. at 163; *In re Stephen W. Grosse, P.C.*, 68 B.R. 847, 850 (Bankr. E.D. Pa. 1987).

A technical or inadvertent violation is not contemptuous and does not warrant the imposition of sanctions. *Liberty Mut. Ins. Co., v. Leroy Holding Co., Inc.*, 226 B.R. 746, 758-59 (N.D.N.Y. 1998) ("Where a violation of the automatic stay is technical or inadvertent, however, a [contempt award] is inappropriate."); *In re Adams*, 94 B.R. 838, 850-51 (Bankr. E.D. Pa. 1989) ("[A]n award of damages...is inappropriate against a party who violates the stay while unaware of the bankruptcy filing.").

The Notice of Termination and Final Invoice were sent *prior* to the Landlord's notification of the Debtor's bankruptcy filing. Therefore, the Debtor's receipt of the Termination Notice and the Final Invoice was inadvertent. As such, an award of damages is inappropriate because the Landlord was unaware of the bankruptcy filing when it was sent.

*The alleged damages arose after the Motion was filed, and do not relate to the Landlord actions complained of in the Motion.*

The Debtor's Motion makes unsubstantiated claims concerning the damages the Debtor is alleged to have incurred as a result of the Termination Notice and Final Invoice. The circumstance in which the Debtor finds itself is wholly attributed to its own doing.

On January 13, 2025, the Debtor filed certifications by the Debtor's bankruptcy and non-bankruptcy counsel allegedly substantiating the damages incurred by the Debtor in connection with the Motion. [Docs 55 and 56]

Mr. Bianco's certification alleges his firm ran up nearly $5,000 in time related to the Motion. However, Mr. Bianco's time was spent on December 20th, 23rd, and 24th. All of this work was done after the Debtor's Motion was filed on December 17th. Clearly, none of that time was spent on matters addressed by the Debtor's Motion and cannot be included as damages relating to the Termination Notice and Final Invoice.

Likewise, Mr. Steven's certification alleges his firm amassed approximately $4,200 in time. However, only $1,100 of time was incurred as of the date the Motion was filed. In fact, the vast majority of Mr. Steven's time is from January 8th and beyond. Like Mr. Bianco, the bulk of Mr. Steven's time occurred after the Motion and does not relate to the facts and circumstances addressed by the Motion.

4

***The Debtor's inability to move the FFE is a direct result of its failure to secure the necessary permits from the Borough of Paramus and use of registered and insured contractors.***

The Debtor's Motion raises the Landlord's issuance of the Termination Notice and the Final Invoice, as well as alleged communications with a subsidiary, as actions that violated the automatic stay.

The Motion includes nothing but hearsay concerning any alleged discussions between the Landlord and the Debtor's subsidiary. Without competent evidence, the Debtor has failed to carry its burden and the Motion must be denied.

Contemporaneously filed with this Objection is the Landlord's motion requesting to compel rejection of the Lease and for other relief ("Motion to Reject"), the facts and argument are incorporated herein as if set forth at length. [Doc __]

In the Motion to Reject, the Landlord meticulously lays out the timeline during which the Debtor's actions caused the Borough of Paramus to revoke a Temporary Certificate of Occupancy and issue a Stop Work Order on the Premises.

It is well-settled law that a Chapter 11 debtor tenant is not excused from complying with valid and enforceable state and local regulations, including obtaining necessary permits, even during bankruptcy proceedings. *In re Beker Indus. Corp.*, 57 B.R. 611, 624 (Bankr. S.D.N.Y. 1986) ("A debtor in possession under Chapter 11 is not pro tanto excused by virtue of its bankruptcy from complying with valid and enforceable state and local regulation."); *Cournoyer v. Lincoln*, 790 F.2d 971, 977 (1st Cir. 1986) ("…the automatic stay should not be used as a shield against the application and enforcement of valid state and local laws.").

The Landlord's Motion to Reject details the Debtor's continued failure to obtain the necessary permits from the borough so that it can enter the space and perform any work. The Debtor's failure to obtain the necessary permits from the borough, and the Debtor's failure to use

5

insured contractors who are properly registered with the borough, are the direct cause of the Debtor's inability to legally enter the space and perform any work – not the issuance of the Landlord's Notice of Termination or Final Invoice.

The Landlord's Motion to Reject details the Debtor's continued attempts to use unregistered, unlicensed, uninsured, and undocumented workers. Not only does this violate the Lease terms, but it violates the local borough laws and places the Landlord's Premises, the surrounding non-debtor premises, and the employees and visitors at grave risk of harm.

Permits are required for the disconnection of electrical and plumbing lines. Even work concerning FFE not connected to water or electrical is prohibited by the Stop Work Order.

The Debtor admits in its Motion that the remaining work requires the appropriate permits to be secured from the borough, and the use of registered and insured contractors.

The Debtor's Motion does not explain why the Debtor refuses to take any steps to remedy the permitting or insurance issues, or secure competent contractors.

### *The Debtor has no interest in the remaining FFE.*

The Debtor alleges the Landlord has interfered with its ability to recover the "Hacker" brand equipment from the Premises and use such equipment for its reorganization. Furthermore, the Debtor argues that its inability to relocate the showroom by January 1st, "jeopardizes over $300,000.00 in revenue from … potential projects." However, there is no evidence of the existence of any of these "potential projects" and it is unclear whether the Debtor even has an enforceable interest concerning the sale of Hacker equipment or the FFE.

The Court held hearings on the Debtor's first day motions on December 23, 2024. See transcript of December 23, 2024 hearing ("Transcript") attached as **Exhibit B.**

During a discussion concerning the Landlord's Paramus Premises, the Debtor admitted that it has no operating business at the Paramus location. Instead, while the underlying Lease is executed by and between the Debtor and the Landlord, it is a subsidiary, Hacker Kitchens Paramus, LLC ("HKP") that uses the Paramus property as a showroom to sell "Hacker" kitchen equipment. *See* Transcript, page 6-7.

Attached as **Exhibit C** is a copy of a *Termination of Distribution Agreement* ("Hacker Termination"), dated January 2, 2025, which was sent from Hacker North America to Mr. Cakmak for Mod Arte, LLC ("Mod Arte"). Mod Art is listed as a creditor of the Debtor and is owned and controlled by Mr. Cakmak.

Pursuant to the Hacker Termination, Mod Arte violated its distribution agreement and achieved sales of merely $13,000 in 2024. That's $187,000 short of what was apparently required under the distribution agreement.

Not only is it unlikely that the Debtor stood to gain $300,000 in revenue from potential projects related to the Hacker showroom, but it is unclear whether the Debtor has any legal or equitable interest in the FFE remaining on the Premises.

It appears the remaining FFE is owned or controlled by HKP or Mod Arte. Whatever the case, it is not owned or controlled by the Debtor. Why would it be? What value would a showroom kitchen have to a "Non-Vessel Operating Common Carrier that [allegedly] operates as the intermediary between shipping companies that own and operate the vessels and businesses that need to ship the products"? *See* Transcript, page 5.

Should any harm occur as a result of the Debtor's continued attempts to perform uninsured and illegal work in the Borough of Paramus, or from its failure to promptly secure the necessary permits in order to enter the Premises, the Debtor's estate will be saddled with a debilitating

7

administrative claim that will sink this case and any hope for the Debtor's successful reorganization.

The Debtor's actions, under the direction of the Debtor's attorneys (*see* Motion to Reject), have already caused the Debtor's estate to incur additional administrative expenses.

Moreover, it is clear from the record (including the Debtor's failure to obtain the necessary insurance coverage) that the Debtor is unable to cover any damages resulting from its actions leaving the Landlord and the estate completely exposed. *See* Motion to Reject (Detailing the Debtor's lack of sufficient or appropriate insurance coverage and the necessary endorsements protecting the Landlord in the event of a covered event.).

**WHEREFORE**, for the reasons stated above, Landlord respectfully requests that the Court deny the Debtor's Motion for sanctions and a finding of a stay violation in its entirety.

Dated: January 14, 2025                                **GENOVA BURNS, LLC**

                                                         */s/ Donald W. Clarke*
                                                         Donald W. Clarke